**18SL-CC02018**

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| ROBERT PENDERGRASS, )<br>ERIC KOECHLING, and )<br>JAMES PATTON )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>BI-STATE UTILITIES CO. )<br> )<br>Serve: )<br>Frank J. Marchesi )<br>12894 Pennridge Drive )<br>Bridgeton, MO 63044 )<br> )<br>    Defendant. ) | Cause No.<br>Division No.<br><br>**JURY TRIAL DEMANDED** |

## PETITION

Plaintiffs Robert Pendergrass, Eric Koechling, and James Patton (sometimes referred to collectively as "Plaintiffs"), by and through undersigned counsel and for their Petition against Defendant Bi-State Utilities Co. ("Bi-State") hereby state and allege the following:

### Nature of the Case

1. Bi-State is a contractor in the business of providing sewer and water main construction and emergency repair in the St. Louis area and the Midwest region. At various times, Bi-State employed Plaintiffs as non-exempt Foremen, paying Plaintiffs on an hourly rate basis. As Foreman, Plaintiffs were required to report to work at Bi-State's office at or around 6:00 a.m. Bi-State, however, maintained that Plaintiffs' work shift did not start until 7:00 a.m. During this pre-shift time between 6:00 a.m. and 7:00 a.m., Plaintiffs gathered materials needed to perform the day's work, secured fuel for their company trucks and equipment, loaded materials and equipment onto their company trucks, received instructions, and performed various other work.

Bi-State did not pay Plaintiffs for this pre-shift time.  Instead, Bi-State only paid Plaintiffs from 7:00 a.m. to 3:30 p.m. (totaling eight hours of pay due to a 30-minute lunch break).  After completing work at their respective job sites, at times Plaintiffs were required to return equipment and materials to the office and would do so after 3:30 p.m.  Again, Bi-State did not pay Plaintiffs for this post-shift time.

2. Plaintiffs seeks to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and Missouri wage and hour statutes and to recover damages under Missouri common law.

3. Plaintiff Pendergrass further seeks redress for Bi-State's unlawful reduction of his work hours and eventual July 7, 2017, unlawful termination that were in retaliation for Pendergrass exercising his rights to Workers' Compensation Benefits.

## Jurisdiction and Venue

4. Plaintiff Pendergrass is, and at all times mentioned herein was, a citizen of the State of Missouri residing in St. Charles County, Missouri.

5. Plaintiff Koechling is, and at all times mentioned herein was, a citizen of the State of Missouri residing in Jefferson County, Missouri.

6. Plaintiff Patton is, and at all times mentioned herein was, a citizen of the State of Missouri residing in Warren County, Missouri.

7. At the time of the conduct complained of herein and at all times mentioned, Bi-State was a Missouri corporation with its principal place of business being Bridgeton, Missouri, which is in St. Louis County, Missouri.

8. As Bi-State transacts business in, and conduct described herein occurred in, St. Louis County, Missouri, pursuant to Mo. Rev. Stat. 508.010, venue and jurisdiction are proper in this Court of general jurisdiction.

### Allegations

*Robert Pendergrass*

9. Plaintiff Pendergrass began working for Bi-State on or around January 13, 2016. He was given the job position of Foreman in or around March of 2016.

10. On September 13, 2016, Pendergrass was injured in a car accident while driving a company truck, on duty, for Bi-State.

11. Bi-State was aware of Pendergrass's work-related injury on September 13, 2016.

12. Bi-State's owner, Frank Marchesi, and Manager Charlie, told Pendergrass shortly after his injury that Bi-State would cover all of his medical bills and take care of Pendergrass because this was a work-related injury.

13. Pendergrass continued to work as a Foreman after his September 13, 2016, injury.

14. Pendergrass had multiple doctor's visits during this time.

15. Pendergrass eventually submitted his medical bills to Bi-State, and Bi-State refused to pay the bills despite their previous representation.

16. Having previously submitted a Report of Injury, and after Bi-State refused to pay his medical bills as promised, in or around June 2017, Pendergrass informed Bi-State that he would be filing a Claim for Compensation with the Division of Workers' Compensation. From that point forward, Bi-State began reducing Pendergrass's hours.

17. From the point at which Bi-State was on notice that Pendergrass would be filing a claim for workers' compensation benefits, they drastically cut his hours and indicated to him that they did not have work for him.

18. All the while, however, other employees were working full time. And Bi-State hired two additional workers during this period.

19. Pendergrass informed Bi-State that what they were doing was against the law, and Bi-State told him they did not care.

20. On July 7, 2017, Bi-State terminated Pendergrass's employment despite there being an ample amount of work that he could perform for Bi-State. The stated reason was that Bi-State did not have any work for Pendergrass.

21. Upon becoming a Foreman, and a number of times thereafter, Pendergrass was specifically told by his supervisor Andy, and one of Bi-State's owners – Frank Marchesi – that he was required to report to Bi-State's office at 6 a.m. each morning before his 7:00 a.m. shift. Pendergrass did as he was told.

22. While at the office, before his 7:00 a.m. shift time, Pendergrass was required to gather materials needed to perform the day's work, secure fuel for his company truck and equipment, load materials and equipment onto his trucks, receive work instructions, and perform various other work. Pendergrass, however, was not paid for his pre-shift work.

23. Pendergrass complained to Bi-State on several occasions about Bi-State's failure to properly compensate him. In response, Bi-State said that if he did not like it, he could quit.

24. On one occasion, Pendergrass was forced to redo a grating project after – through no fault of him or his crew – the project was damaged. Supervisor Andy and Frank Marchesi required Pendergrass and James Patton to redo this project. Supervisor Andy and/or Frank Marchesi

specifically stated that Pendergrass and Patton would not be paid for this work and if they did not like it they would be fired. It took the two men 3-4 hours, and they were not paid for this time.

25. On several occasions Pendergrass was required to work past 3:30 p.m. and bring materials or equipment back to the office from the jobsite. Pendergrass, however, was not paid for time worked after 3:30 p.m.

26. On one occasion, Pendergrass was involved in a work car accident. Frank Marchesi instructed him to wait with the truck for 2-3 hours immediately following the accident – instead of going to the emergency room – so the company truck would not be left unattended. This 2-3 hours was after 3:30 p.m., and Pendergrass was not compensated for this time.

27. Another occasion involved Pendergrass being instructed by Mr. Marchesi to take his work truck into the auto body shop to receive repairs and/or estimates for repairs. This took Pendergrass roughly four hours, and he was not compensated for his time worked. There are several other similar instances where Pendergrass was not paid for time worked due to truck repair.

28. On several occasions Pendergrass filled out his timesheets for Bi-State and the timesheet indicated Pendergrass's hours worked in a work week were greater than 40. Bi-State, however, did not pay him overtime or for the hours worked over forty in the work week. Because of this; the directive to arrive at work at 6:00 a.m. and that he would not be paid for time before 7:00 a.m.; and the response to his complaints, on most occasions Pendergrass did not write down all his time worked.

29. It was well-known by Bi-State that Pendergrass was routinely working over 40 hours per week yet not being paid overtime.

*James Patton*

30. Plaintiff Patton began working for Bi-State as a Foreman in or around June 2011.  He worked until in or around February 2018.

31. At the start of his employment, and a number of times thereafter, Patton was specifically told by Supervisor Andy and Frank Marchesi that he was required to report to Bi-State's office at 6 a.m. each morning before his 7:00 a.m. shift.  Patton did as he was told.

32. While at the office, before his 7:00 a.m. shift time, Patton was required to gather materials needed to perform the day's work, secure fuel for his company truck and equipment, load materials and equipment onto his truck, receive work instructions, and perform various other work.  Patton, however, was not paid for his pre-shift work.

33. Patton complained to Bi-State on several occasions about Bi-State's failure to properly compensate him.  In response, Bi-State said that if he did not like it, he could quit.

34. On one occasion, Patton was forced to redo a grating project after – through no fault of him or his crew – the project was damaged.  Supervisor Andy and Frank Marchesi required Patton and Pendergrass to redo this project. Supervisor Andy and/or Frank Marchesi specifically stated that Patton and Pendergrass would not be paid for this work and if they did not like it they would be fired.  It took the two men 3-4 hours, and they were not paid for this time.

35. On several occasions Patton was required to work past 3:30 p.m. and bring materials or equipment back to the office from the jobsite.  Patton, however, was not paid for time worked after 3:30 p.m.

36. On several occasions Patton filled out his timesheets for Bi-State and the timesheet indicated Patton's hours worked in the work week were greater than 40.  Bi-State, however, did

not pay him overtime or for the hours worked over forty in the work week. Because of this; the directive to arrive at work at 6:00 a.m. and that he would not be paid for time before 7:00 a.m.; and the response to his complaints, on most occasions Patton did not write down all his hours worked in a week.

37. It was well-known by Bi-State that Patton was routinely working over 40 hours per week yet not being paid overtime.

### *Eric Koechling*

38. Plaintiff Koechling began working for Bi-State as a Foreman in or around March 2014. He worked until in or around April 2018.

39. At the start of his employment, and a number of times thereafter, Koechling was specifically told by Supervisor Andy and Frank Marchesi that he was required to report to Bi-State's office at 6 a.m. each morning before his 7:00 a.m. shift. Koechling did as he was told.

40. While at the office, before his 7:00 a.m. shift time, Koechling was required to gather materials needed to perform the day's work, secure fuel for his company truck and equipment, load materials and equipment onto his trucks, receive work instructions, and perform various other work. Koechling, however, was not paid for his pre-shift work.

41. There were several times when Koechling performed worked after 3:30 p.m. and was not paid for the same. In most instances Koechling did not report this work – although Bi-State knew constructively and/or actually that it was performed. Koechling did not report this work because he was specifically informed that any overtime work that was performed without pre-approval would not be compensated.

42. It was well-known by Bi-State that Koechling was routinely working over 40 hours per week yet not being paid overtime.

*All Plaintiffs*

43. Bi-State maintained a common policy and practice of requiring employees like Plaintiffs to report their time on hand-written timesheets. The timesheets did not indicate the start and end time but rather just a total of hours worked.

44. This was despite the technological feasibility of more accurate methods of time-reporting, including swipe cards and computerized reporting. Such technology and timekeeping methods would have been relatively inexpensive and enabled Bi-State to capture time worked accurately and without manipulation.

45. Bi-State, however, also maintained a common policy and practice of discouraging overtime. Separate and apart from the pre-shift work for which Plaintiffs and employees were never compensated, Bi-State required pre-approval of any overtime hours worked and unless pre-approval was given would not pay employees for overtime worked.

46. Most egregiously, Bi-State made clear to employees like Plaintiffs that they would not be paid for pre-shift or post-shift hours worked and in fact failed to pay for overtime hours despite the reporting of the same. This refusal to pay Plaintiffs overtime was despite reports to Bi-State of their failure to pay for all time worked and failure to pay overtime wages.

47. As a result, Plaintiffs felt pressure to report a straight eight hours of work per day, and forty hours per week, despite regularly working in excess of this.

48. Bi-State was actually and constructively aware that Plaintiffs were working in excess of forty hours per week and were working unreported hours. Indeed, Bi-State mandated this pre-shift and post-shift work do be completed without pay in addition to other projects to be done without pay.

### First Cause of Action:
### Fair Labor Standards Act – Unpaid Overtime Wages
### (*All Plaintiffs v. Bi-State*)

49. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

50. At all relevant times, Plaintiffs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

51. The overtime wage provisions set forth in § 201, *et seq.*, of the FLSA apply to Bi-State.

52. At all relevant times, Bi-State was the employer of Plaintiffs and was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

53. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

54. Bi-State failed to pay Plaintiffs the overtime wages to which they were entitled under the FLSA.

55. Bi-State's violations of the FLSA, as described in this Petition, have been willful and intentional.

56. Bi-State has not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

57. As a result of Bi-State's willful violations of the FLSA, Plaintiffs have suffered damages by being denied overtime wages in accordance with 29 U.S.C. § 201, *et seq.*, in amounts to be determined at trial or through undisputed record evidence, and is entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA or deemed just and appropriate by this Court.

**WHEREFORE**, Plaintiffs pray for the following relief:

A. The payment at one and one-half times Plaintiffs' regular rate of pay for all overtime hours worked by Plaintiffs for which they have not been properly compensated;

B. Liquidated damages;

C. Reasonable attorneys' fees and costs;

D. Prejudgment and post judgment interest; and

E. All other relief this Court deems just and appropriate.

<u>Second Cause of Action</u>:
Missouri Wage and Hour – Unpaid Overtime Wages
(*All Plaintiffs v. Bi-State*)

58. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

59. At all relevant times herein, Plaintiffs were entitled to the rights, protections, and benefits provided under Missouri's wage and hour laws – Mo. Rev. Stat. § 290.500 *et seq*.

60. Missouri's wage and hour laws regulate, among other things, the payment of overtime wages by employers, subject to limited exceptions not applicable here.

61. At all relevant times herein, Bi-State was Plaintiffs' employer, and Plaintiffs were Bi-State's employees, within the meaning of Missouri's wage and hour laws – Mo. Rev. Stat. §§ 290.500(3) & (4).

62. Pursuant to Missouri's wage and hour laws (Mo. Rev. Stat. § 290.505.1), employees like Plaintiffs shall be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a work week.

63. Bi-State violated Missouri's wage and hour laws by willfully and intentionally refusing and failing to pay Plaintiffs overtime wages required under Missouri law.

64. Pursuant to Mo. Rev. Stat. § 290.527, Plaintiffs are therefore entitled to damages equal to the full amount of their wage rate and an additional equal amount as liquidated damages, less any amount actually paid to Plaintiffs by Bi-State.

65. Plaintiffs are also entitled to an award of prejudgment and post judgment interests at the applicable legal rate.

66. Plaintiffs are also entitled to their costs and reasonable attorney's fees incurred in this action.

**WHEREFORE**, Plaintiffs pray for the following relief:

A. Compensatory damages equal to the full amount of Plaintiffs' wage rate and an additional equal amount as liquidated damages, less any amount actually paid to Plaintiffs by Bi-State;

B. Attorneys' fees and costs as allowed by Mo. Rev. Stat. § 290.527;

C. Prejudgment and post judgment interest; and

D. All other relief this Court deems just and appropriate.

### Third Cause of Action:
### Quantum Meruit
### (*All Plaintiffs v. Bi-State*)

67. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

68. Bi-State recognized the benefits conferred upon it by Plaintiffs.

69. Bi-State accepted and retained the benefits under circumstances that would render such retention inequitable.

70. Bi-State has therefore been unjustly enriched, and Plaintiffs have been damaged.

71. The payment requested by Plaintiffs for the benefits produced by them to Bi-State are based on customary and reasonable rates for such services, or like services, at the time and in the locality where the services were rendered.

72. Plaintiffs are entitled to damages equal to all unpaid wages due.

73. Plaintiffs are also entitled to an award of prejudgment and post judgment interest at the applicable legal rate.

**WHEREFORE**, Plaintiffs pray for the following relief:

    A. Compensatory damages;

    B. Prejudgment and post judgment interest; and

    C. All other relief this Court deems just and appropriate.

**Fourth Cause of Action**:
**Unjust Enrichment**
*(All Plaintiffs v. Bi-State)*

74. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

75. Plaintiffs conferred benefits on Bi-State in the form of unpaid labor, and Bi-State received such benefits conferred upon it by Plaintiffs.

76. Bi-State appreciated the fact of the benefits.

77. Bi-State accepted and retained the benefits in circumstances that render such retention inequitable.

78. Bi-State has therefore been unjustly enriched, and Plaintiffs have been damaged.

79. Plaintiffs are entitled to damages equal to all unpaid wages due.

80. Plaintiffs are also entitled to an award of prejudgment and post judgment interest.

**WHEREFORE**, Plaintiffs pray for the following relief:

    A. Compensatory damages;

B. Prejudgment and post judgment interest;

C. All other relief this Court deems just and appropriate.

**Fifth Cause of Action**:
**Workers' Compensation Retaliation**
(*Pendergrass v. Bi-State*)

81. Plaintiff Pendergrass realleges and incorporates by reference all the allegations contained in paragraphs 1-29.

82. R.S.Mo. § 287.780, titled "Discrimination because of exercising compensation rights prohibited – civil action for damages," states as follows:

> No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

83. Plaintiff's Pendergrass's exercise of his rights to Workers' Compensation benefits was a contributing and motivating factor in Bi-State's decision to reduce his hours and ultimately terminate his employment. Indeed, Pendergrass was told that these decisions were based on the fact that there was not enough, or any, work for him to do. But there was ample work for Pendergrass to perform, and Bi-State hired two additional employees during this time.

84. Bi-State's conduct – reducing Pendergrass's hours, failing to permit him to perform work that was available, and terminating his employment – was done with malice or in reckless disregard for Pendergrass's rights.

85. That as a proximate result of Pendergrass having his hours reduced and being terminated from his employment, he has sustained and will continue to sustain damages consisting of losses in pay and benefits.

86. Further, that as a proximate result of Bi-State's conduct mentioned herein, Pendergrass has sustained garden variety emotional distress.

**WHEREFORE**, Plaintiff Robert Pendergrass, prays for Judgment against Bi-State for actual, compensatory, and punitive damages in a fair and reasonable amount in excess of Twenty-Five Thousand Dollars ($25,000.00); for his Court costs and expenses incurred herein; and for whatever and further relieve the Court deems just and proper.

Respectfully submitted,

HKM Employment Attorneys LLP

By */s/ S. Cody Reinberg*
S. Cody Reinberg #66174
9666 Olive Blvd., Suite 202A
St. Louis, Missouri 63132
314-391-9557
creinberg@hkm.com

Attorney for Plaintiffs Robert Pendergrass, Eric Koechling, and James Patton